**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO**

| | |
|---|---|
| THE BRAUN CORPORATION, d/b/a BRAUNABILITY<br>631 W. 11th Street<br>Winamac, Indiana 46996<br><br>    *Plaintiff*,<br><br>    v.<br><br>DRIVERGE VEHICLE INNOVATIONS, LLC<br>4199 Kinross Lakes Pkwy, Suite 300<br>Richfield, OH 44286<br><br>    and<br><br>BRUNS HOLDING GMBH & CO. KG<br>Hauptstraße 101<br>26689 Apen<br>Germany<br><br>    and<br><br>AMF-BRUNS GMBH & CO. KG<br>Hauptstraße 101<br>26689 Apen<br>Germany<br><br>    and<br><br>AMF BRUNS AMERICA, L.P.<br>1251 Campus Drive<br>Stow, Ohio 44224<br><br>    *Defendants*. | **Civil Case No: 5:26-cv-653**<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT**

-1-

Plaintiff The Braun Corporation, d/b/a BraunAbility ("BraunAbility" or "Plaintiff"), for its complaint against Defendants Driverge Vehicle Innovations, LLC ("Driverge"), Bruns Holding GmbH & Co. KG ("Bruns Holding"), AMF-Bruns GmbH & Co. KG ("AMF Germany"), and AMF Bruns America, L.P. ("AMF America"), alleges as follows:

## NATURE OF THE CASE

1. This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 100, *et seq.*, including, without limitation, 35 U.S.C. § 271.

2. This action arises from Defendants' coordinated and deliberate scheme to copy BraunAbility's technology protected by U.S. Patent No. 7,441,995 (the "'995 Patent") and gain an unfair and impermissible "head start" in the U.S. market for wheelchair lifts.

3. Beginning years before the expiration of the '995 Patent, no later than September 30, 2022, Defendants embarked on a multi-year development effort that culminated in an infringing wheelchair lift ("Infringing Lift").

4. On information and belief, the Infringing Lift was specifically and knowingly designed by Defendants to comply with U.S. regulations and to compete directly with BraunAbility's patented lifts in the U.S. market.

5. Driverge has used, begun regulatory testing, marketed, and, on information and belief, made substantial preparations in the United States to begin commercial production of the Infringing Lift in the United States, with assistance and encouragement from the other Defendants.

6. Driverge's pre-expiration infringing activity will allow Defendants to enter the U.S. market with the Infringing Lift years earlier and at a higher volume of sales than would otherwise have been possible had Defendants respected BraunAbility's rights under the '995 Patent.

7. As a direct and proximate result of Defendants' pre-expiration infringement and the unlawful head start gained therefrom, BraunAbility has suffered significant and irreparable harm. Additionally, BraunAbility will suffer immense monetary damages in the form of its lost profits on sales made by Defendants for a period of time corresponding to the competitive advantage Defendants obtained through their pre-expiration infringement, beginning on the date Defendants commence full commercial production and/or sales and continuing for up to or exceeding nearly four years thereafter.

## THE PARTIES

8. Plaintiff The Braun Corporation, doing business as BraunAbility, is a corporation organized and existing under the laws of the State of Indiana, with its principal place of business at 631 West 11th Street, Winamac, Indiana 46996.

9. BraunAbility and its affiliates are global leaders in the design, manufacture, and sale of innovative mobility transportation solutions such as wheelchair accessible vehicles, wheelchair lifts, wheelchair tie-down and occupant securement systems, and vehicle flooring systems.

10. On information and belief, Defendant Bruns Holding GmbH & Co. KG is a German entity with its principal place of business at Hauptstraße 101, 26689 Apen, Germany.

11. Bruns Holding is the intellectual property holding entity for a family of affiliated mobility companies (the "Bruns Corporate Family").

12. On information and belief, Defendant AMF-Bruns GmbH & Co. KG is a German entity with its principal place of business at Hauptstraße 101, 26689 Apen, Germany.

13. AMF Germany serves as the German operating arm for the Bruns Corporate Family, including for its wheelchair lift business.

14.     AMF Germany is in the business of designing, manufacturing, and selling wheelchair accessible vehicles, wheelchair lifts, and other mobility products in the European region.

15.     AMF Germany competes directly with a BraunAbility affiliate, BraunAbility Europe AB.

16.     On information and belief, Defendant AMF Bruns America, L.P. is a limited partnership organized under the laws of Georgia, with its principal place of business at 1251 Campus Drive, Stow, Ohio.

17.     AMF America is the U.S. operating arm for the Bruns Corporate Family.

18.     AMF America is in the business of designing, manufacturing, and selling wheelchair tie-down and occupant restraint systems, vehicle flooring systems, and other mobility products in North America.

19.     AMF America competes directly with a BraunAbility affiliate, Valeda Company, LLC (d/b/a Q'Straint).

20.     On information and belief, Gerit Bruns is a central figure linking Defendants Bruns Holding, AMF Germany, and AMF America, collectively referred to herein as the "Bruns Defendants."

21.     Gerit Bruns is a Managing Director of AMF Germany, with direct responsibility for, among other things, its wheelchair lift business.

22.     Gerit Bruns is also a key controller of the holding company, Bruns Holding, through his role in its affiliated management entity.

23.     As an inventor, Gerit Bruns's name appears on numerous patents and patent applications held by Bruns Holding, including those covering the Infringing Lift.

-4-

24. On information and belief, the Bruns Defendants operate as a single, centrally controlled business enterprise with respect to their U.S. operations.

25. For example, U.S. patent applications invented by employees of AMF America, such as U.S. Patent Application Nos. 18/762,869 and 18/471,525, have been assigned directly to the German operating company, AMF Germany.

26. Additionally, U.S. patents and patent applications invented by employees of AMF Germany, including U.S. Patent Application No. 18/426,834, U.S. Patent Nos. 9,375,369 and 9,814,635, and U.S. Design Patent No. D708,412, have been assigned to the German holding company, Bruns Holding.

27. On information and belief, Defendant Driverge Vehicle Innovations, LLC is a limited liability company organized and existing under the laws of the State of Ohio, with its principal place of business at 4199 Kinross Lakes Pkwy, Suite 300, Richfield, OH 44286.

28. Driverge is in the business of designing, manufacturing, and selling wheelchair accessible vehicles in the North American market.

29. Driverge competes directly with BraunAbility in the sale of wheelchair accessible vehicles and, as alleged further herein, plans to compete directly with BraunAbility in the sale of wheelchair lifts.

30. On information and belief, Defendant Driverge is linked with the Bruns Defendants through a web of corporate relationships, shared financial interests, and a direct, strategic business partnership.

31. Driverge publicly advertises itself as an "Exclusive AMF-Bruns America Partner" and integrates products from the Bruns Corporate Family, such as SmartFloor systems and wheelchair tie-down and occupant securement systems, into its vehicles.

-5-

32. On information and belief, Defendant Driverge's parent company, WMK, LLC d/b/a MobilityWorks, and AMF Germany are co-owners of AMF America.

## JURISDICTION AND VENUE

33. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States, 35 U.S.C. § 100, *et seq.*

34. This Court has personal jurisdiction over Defendant Driverge because it was organized and its principal place of business is located in this judicial district.

35. This Court has personal jurisdiction over Defendant AMF America because its principal place of business is located in this judicial district.

36. This Court has personal jurisdiction over Defendant Bruns Holding because Bruns Holding has purposefully directed its activities at the United States and specifically at the State of Ohio. On information and belief, Bruns Holding, as part of a coordinated scheme with its affiliated companies, business partners, and Gerit Bruns, authorized the provision of an infringing wheelchair lift design to Driverge, an Ohio-based company, with the knowledge and intent that the design would be used to manufacture and sell infringing products in the U.S. and in this District. The claims for relief asserted herein arise directly out of Bruns Holding's contacts with this forum.

37. This Court has personal jurisdiction over Defendant AMF Germany because AMF Germany has purposefully directed its activities at the United States and specifically at the State of Ohio. On information and belief, AMF Germany, through Gerit Bruns, developed an infringing wheelchair lift design specifically for the U.S. market and provided that design to Driverge, an Ohio-based company, with the knowledge and intent that the design would be used to manufacture

-6-

and sell infringing products in the U.S. and in this District. The claims for relief asserted herein arise directly out of AMF Germany's contacts with this forum.

38. Venue is proper in this judicial district under 28 U.S.C. § 1400(b) because Defendants Driverge and AMF America reside, have regular and established places of business, and have committed acts of infringement in this District.

39. Venue is proper as to Defendant Bruns Holding and AMF Germany under 28 U.S.C. § 1391(c)(3) because they are foreign entities.

## THE '995 PATENT

40. On October 28, 2008, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 7,441,995, entitled "Cam-Actuated Locking Inboard Barrier." A true and correct copy of the '995 Patent is attached hereto as Exhibit A.

41. The '995 Patent is valid, enforceable, and expires on July 29, 2026.

42. The '995 Patent represents a significant innovation in wheelchair lift safety, disclosing a novel system for automatically locking the inboard barrier—also referred to in the industry as an inner roll stop—in its upright position to prevent a wheelchair from rolling off the lift platform during operation.

43. BraunAbility is the owner by assignment of all right, title, and interest in and to the '995 Patent, including the right to sue for and recover damages for all past, present, and future infringement thereof.

44. BraunAbility has complied with the patent marking statute, 35 U.S.C. § 287(a), by marking substantially all products embodying the '995 Patent sold in the United States with the patent number.

**FACTUAL BACKGROUND**

**A.      The Parties' Relationship and the U.S. Market**

45.      The Defendants are not strangers engaged in a random transaction. As alleged above, they are connected through their shared corporate structure, business partnerships, and Driverge's role as an exclusive partner of AMF America.

46.      For years, Driverge has been and continues to be a customer of BraunAbility, purchasing BraunAbility's innovative and patented wheelchair lifts for installation and sale in Driverge's wheelchair accessible vehicles.

47.      The United States market for wheelchair lifts is governed by Federal Motor Vehicle Safety Standard No. 403 ("FMVSS No. 403"), Platform Lift Systems for Motor Vehicles, codified at 49 C.F.R. § 571.403.

48.      FMVSS No. 403 mandates that lifts intended for public use include an "inner roll stop" that prevents the front wheels of a wheelchair from rolling off the lift platform.

49.      To ensure compliance, FMVSS No. 403 requires the inner roll stop to pass dynamic impact and static load tests.

50.      On information and belief, known, non-locking inner roll stops cannot reliably withstand the impact and static load forces specified in FMVSS No. 403.

51.      BraunAbility's '995 Patent discloses a novel and inventive solution that ensures an inner roll stop can comply with the performance requirements of FMVSS No. 403 by positively and rigidly locking the inner roll stop in its deployed position.

52.      On information and belief, AMF Germany manufactures and sells wheelchair lifts in the European region, but those lifts do not include locking inner roll stops that comply with FMVSS No. 403.

**B.      Defendants' Coordinated Scheme to Infringe the '995 Patent**

53.     On information and belief, leveraging their close corporate and business relationships, the Defendants conspired to develop a new wheelchair lift specifically designed to enter and compete in the United States market.

54.     On information and belief, a primary motive for this conspiracy was to eliminate Driverge's need to purchase patented wheelchair lifts from its current supplier, BraunAbility.

55.     On information and belief, the ultimate goal of this conspiracy was for the Defendants to capture BraunAbility's profitable share of the U.S. lift market for themselves.

56.     AMF Germany, through Gerit Bruns, developed a new lift design that is based on the wheelchair lifts it sells in the European region, but incorporates a locking inner roll stop.

57.     On information and belief, Gerit Bruns specifically designed the locking inner roll stop to comply with FMVSS 403 and to enable Defendants' entry into the lucrative U.S. market for wheelchair lifts.

58.     Gerit Bruns's U.S.-specific design for a locking inner roll stop incorporates the novel invention of BraunAbility's '995 Patent.

59.     On information and belief, as part of the coordinated plan to enter the U.S. market, AMF Germany provided its comprehensive lift design to Driverge.

60.     On information and belief, the comprehensive lift design was provided to Driverge with the knowledge and authorization of Bruns Holding.

61.     On information and belief, the transfer of the comprehensive lift design to Driverge was facilitated by the Bruns Corporate Family's U.S. operating arm and Driverge's exclusive partner, AMF America.

62.     On information and belief, beginning no later than September 30, 2022, the Defendants, acting in concert, commenced a multi-year campaign to further develop, test, and commercialize a U.S.-specific lift incorporating Gerit Bruns's design for the locking inner roll stop.

63.     From September 30 to October 4, 2022, Driverge displayed an early version of the U.S.-specific lift at the NMEDA Annual Conference in Charlotte, North Carolina.



64.     On January 30, 2024, Bruns Holding filed a U.S. patent application, published as US 2024/0253960 A1 (the "'960 Application"), disclosing Gerit Bruns's locking inner roll stop. A true and correct copy of the '960 Application is attached hereto as Exhibit B.

65.     The '960 Application references BraunAbility's '995 Patent while discussing the purported difficulties of implementing reliable locking mechanisms in the prior art.

66.     The '960 Application's citation of BraunAbility's '995 Patent demonstrates that Gerit Bruns and the Defendants had actual knowledge of the '995 Patent and its technology.

67.     In April-May 2025, AMF America launched a social media campaign teasing a major announcement with phrases like "Something BIG is coming" and "Something BIG is rolling your way… and no, it's not just another ramp."

68.     AMF America's social media posts used the hashtags "#TransportationInnovation" and "#MobilityInnovation."

69.     Crucially, one of AMF America's posts urged followers to "get ready to celebrate something BIG with us!" that was going to "elevate the way we roll — literally."



70.     On information and belief, AMF America's use of the lift-specific language "elevate…literally" reveals its knowledge of and participation in Defendants' plan to bring the Infringing Lift to the U.S. market.

71.     In mid-February 2026, AMF America announced that its new facility was "officially complete" and that operations would commence on March 1, 2026.



72.     AMF's mid-February 2026 announcement and commencement of operations at AMF America's new U.S. facility on March 1, 2026, roughly coincided with its partner Driverge's late-February 2026 public display of the Infringing Lift at a major U.S. trade show.

73.     On information and belief, AMF America's new, large facility in Stow, Ohio—which AMF earlier announced would "serve as the hub for North American Operations, supporting our mission to make transportation safer for individuals"—in terms of square footage, exceeds the needs for AMF America's existing product lines.



74.     On information and belief, AMF America's new facility was built in anticipation of its role in the commercialization of the Infringing Lift, whether through future manufacturing, distribution, or sales and service support.

75.     From February 20-22, 2026, Driverge displayed the Infringing Lift—a more advanced version of the U.S.-specific lift Driverge displayed approximately 3 ½ years earlier—at the NMEDA Annual Conference in Orlando, Florida.



76.     Driverge's demonstration of the Infringing Lift at NMEDA, a widely-attended national trade show, constituted infringement of the '995 Patent.

77.     Driverge's ability to offer the Infringing Lift for sale places Driverge in a posture of direct competition with its current supplier, BraunAbility.

78.     On information and belief, Bruns Holding controls intellectual property rights for the comprehensive design of the Infringing Lift, not just the locking inner roll stop.

79.     On information and belief, Bruns Holding's U.S. Patent Nos. 9,375,369 and 9,814,635, U.S. Design Patent No. D708,412, and the '960 Application, all cover key aspects of the Infringing Lift's overall design.

80.     The portions of the Infringing Lift relevant to infringement of the '995 Patent are substantively the same as the lift design depicted and described in the '960 Application, including but not limited to FIGS. 21-25 therein.

81.     On information and belief, Driverge could not lawfully make, use, or sell the Infringing Lift in the United States without an express or implied license or authorization from the Bruns Defendants.

82.     On information and belief, Driverge has caused the Infringing Lift to be further used in the United States by delivering it to a third-party testing facility, Applus Idiada Karco Engineering, LLC ("Karco") in Adelanto, California, and directing said facility to perform FMVSS compliance testing for nationwide regulatory approval.

83.     Karco's testing constitutes an infringing use of the Infringing Lift under 35 U.S.C. § 271(a).

84.     On information and belief, Driverge intends to commence full commercial production no later than the first quarter of 2027.

85.     On information and belief, to meet this aggressive production timeline, Driverge must have been engaged, and must still be engaged, in substantial pre-production activities, including, but are not limited to, establishing supply chains, preparing tooling for manufacturing, and organizing its production and service facilities and operations.

86.     By engaging in years of pre-expiration development, testing, marketing, and manufacturing preparations, Defendants have built production know-how, progressed to advanced stages of testing for regulatory compliance, and generated market demand and customer goodwill, all of which has given them an unlawful and impermissible "head start" on the market, enabling

an accelerated market launch in the first quarter of 2027—a timeline that would have been impossible without their pre-expiration infringing activities.

**COUNT I (Direct Infringement by Driverge - 35 U.S.C. § 271(a))**

87. BraunAbility incorporates by reference the allegations in paragraphs 1 through 86 of this Complaint.

88. Without license or authority, Driverge has directly infringed and continues to directly infringe the '995 Patent in violation of 35 U.S.C. § 271(a) by making, using, offering to sell, selling, and/or importing into the United States, the Infringing Lift.

89. The Infringing Lift meets each and every limitation of at least claim 10 of the '995 Patent.

90. For example, the Infringing Lift is a wheelchair lift that includes an inboard barrier system and a platform for supporting a wheelchair.

91. The inboard barrier system of the Infringing Lift includes an inboard barrier plate coupled to the platform at or adjacent an inboard end of the platform.

92. The inboard barrier plate of the Infringing Lift is moveable between a first position and a second position.

93. The Infringing Lift has an arm that includes a first member and a second member.

94. The second member of the Infringing Lift is moveable relative to the first member.

95. The arm of the Infringing Lift is coupled to the inboard barrier plate for moving the inboard barrier plate between the first and second positions.

96. The Infringing Lift has a lock mechanism coupled to the arm.

97. The lock mechanism of the Infringing Lift is moveable between a locking position and an unlocked position.

98.     In the locking position, the lock mechanism of the Infringing Lift engages at least one of the first and second members of the arm to prevent movement of the second member relative to the first member.

99.     In the unlocked position, the lock mechanism of the Infringing Lift is out of engagement with at least one of the first and second members to allow movement of the second member relative to the first member.

100.    The Infringing Lift's lock mechanism includes a biasing member to bias the lock mechanism toward the locking position.

101.    The claim chart attached as Exhibit C indicates where each element of claim 10 of the '995 Patent is present in the Infringing Lift.

102.    Driverge, in concert with the Bruns Defendants, acted with full knowledge of the '995 Patent and BraunAbility's rights therein.  Despite this knowledge, they proceeded with willful blindness or in objectively reckless disregard of BraunAbility's patent rights, engaging in a multi-year scheme of infringement, on information and belief, for the express purpose of gaining a significant and unlawful competitive advantage: a multi-year head start on the market.  This scheme allowed Defendants to complete all necessary development, testing, and marketing activities so they could launch a competing product immediately upon the '995 Patent's expiration, years ahead of when they would have been able to otherwise, all at BraunAbility's expense.

103.    Driverge's infringement of the '995 Patent has been and continues to be willful, wanton, and deliberate.

104.    As a direct and proximate result of Driverge's willful infringement, BraunAbility has been and will continue to be irreparably harmed.

**COUNT II (Induced Infringement by Driverge - 35 U.S.C. § 271(b))**

105.    BraunAbility incorporates by reference the allegations in paragraphs 1 through 104 of this Complaint.

106.    With knowledge of the '995 Patent and with the specific intent to cause infringement, and without license and authority, Driverge has actively induced the infringement of the '995 Patent in violation of 35 U.S.C. § 271(b) by providing the Infringing Lift to a third-party testing facility, believed to be Karco, and causing said facility to use the Infringing Lift in the United States in violation of 35 U.S.C. § 271(a).

107.    Driverge's inducement of infringement has been and continues to be willful, wanton, and deliberate.

108.    As a direct and proximate result of Driverge's inducement of infringement, BraunAbility has been and will continue to be irreparably harmed.

**COUNT III (Induced Infringement by the Bruns Defendants - 35 U.S.C. § 271(b))**

109.    BraunAbility incorporates by reference the allegations in paragraphs 1 through 108 of this Complaint.

110.    With knowledge of the '995 Patent and with the specific intent to cause infringement in the United States, and without license and authority, the Bruns Defendants, acting in concert, have actively induced infringement of the '995 Patent in violation of 35 U.S.C. § 271(b) by encouraging, aiding, and/or persuading Driverge to directly infringe the '995 patent in violation of 35 U.S.C. § 271(a).

111.    AMF Germany's active steps to induce infringement include, but are not limited to: (a) developing a lift design that it knew copied the invention of the '995 Patent; (b) creating that design specifically for the U.S. market; (c) providing the infringing design to Driverge, an

-17-

Ohio company, for the express purpose of manufacturing, using, offering for sale, and selling the Infringing Lift in the United States.

112.    Bruns Holding's active steps to induce infringement include, but are not limited to: (a) seeking and obtaining broad patent protection in the U.S. for multiple aspects of the lift's design; (b) holding the intellectual property for the infringing design; and (c) authorizing or directing AMF Germany to provide the infringing design to Driverge, for the express purpose of manufacturing, using, offering for sale, and selling the Infringing Lift in the United States.

113.    AMF America's active steps to induce infringement include, on information and belief, acting as the U.S. conduit for the scheme, facilitating communication and the transfer of the infringing design, and coordinating U.S. market entry strategy.

114.    Each of the Bruns Defendants knew or was willfully blind to the fact that its actions would induce Driverge to directly infringe the '995 Patent.

115.    The Bruns Defendants' inducement of infringement has been willful, wanton, and deliberate.

116.    As a direct and proximate result of the Bruns Defendants' willful inducement of infringement, BraunAbility has been and will continue to be irreparably harmed.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff The Braun Corporation respectfully requests that this Court enter judgment in its favor and against Defendants Driverge Vehicle Innovations, LLC, AMF Bruns America, L.P., AMF-Bruns GmbH & Co. KG, and Bruns Holding GmbH & Co. KG, and grant the following relief:

-18-

A. A judgment that Defendants have infringed one or more claims of U.S. Patent No. 7,441,995;

B. An order preliminarily and permanently enjoining Defendants, their officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with them, from further acts of infringement of the '995 Patent;

C. An award of damages adequate to compensate BraunAbility for Defendants' infringement, in an amount to be proven at trial, including but not limited to damages for Defendants' accelerated market entry and resulting lost profits to BraunAbility during the head start period following the expiration of the '995 Patent;

D. A judgment that Defendants' infringement has been egregious and an order awarding BraunAbility enhanced damages up to three times the amount of actual damages found, pursuant to 35 U.S.C. § 284;

E. A judgment that this is an exceptional case and an order awarding BraunAbility its reasonable attorneys' fees, pursuant to 35 U.S.C. § 285;

F. An award of pre-judgment and post-judgment interest on all damages awarded; and

G. Such other and further relief as the Court may deem just and proper.

Case: 5:26-cv-00653 Doc #: 1 Filed: 03/19/26 20 of 20. PageID #: 20

Dated: March 19, 2026

Respectfully submitted,

/s/ *Mark C. Johnson*
Mark C. Johnson (0072625)
mjohnson@rennerotto.com
Sarah L. Boone (098880)
sboone@rennerotto.com
1621 Euclid Avenue
Floor 19
Cleveland, Ohio 44115

/s/ Daniel A. Tallitsch
Daniel A. Tallitsch (IL 6290889)
The Braun Corporation
645 W. Carmel Drive
Carmel, Indiana 46032
t (630) 460-1441
dan.tallitsch@braunability.com

Attorneys for Plaintiff, The Braun Corporation